UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DASHAWN MARTISE CARTER,

        Petitioner,              Case No. 1:19-cv-543

v.                                        Honorable Hala Y. Jarbou

O'BELL WINN,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Dashawn Martise Carter is incarcerated with the Michigan Department of Corrections at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. On February 5, 2016, following a six-day jury trial in the Ingham County Circuit Court, Petitioner was convicted of first-degree murder, in violation of Mich. Comp. Laws § 750.316, and use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On March 2, 2016, the court sentenced Petitioner to life imprisonment without parole for the murder conviction, to be served consecutively to a 2-year sentence for felony-firearm.

        On July 2, 2019, Petitioner filed his habeas corpus petition raising one ground for relief, as follows:

    I.    Due process rights—The prosecution asked the trial court to warn its own witness[, Miranda Case,] after my lawyer made his opening statement promising the jury they would hear from Miranda Case[, who would testify] to hearing a 2nd volley of shots. This warning intimidated Ms. Case not to testify.

(Pet., ECF No. 1, PageID.5.) Respondent has filed an answer to the petition (ECF No. 10) stating that the petition should be denied because it is meritless.[1] Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the ground raised is without merit. Accordingly, I recommend that the petition be denied.

## Discussion

### I.  Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> Defendant attended a barbecue hosted by the decedent, Eric Jackson. During the festivities, defendant and Jackson quarreled, and a physical fight between the two men ensued. Defendant ran toward the home of neighbor Rachel Reynolds and Jackson was returning to his own home when defendant yelled that Jackson "better make sure you go get a gun." This provoked Jackson, who ran toward Reynolds' porch to confront defendant a second time. Reynolds allowed defendant inside, but her boyfriend, Walter Sweat, prevented Jackson from entering and encouraged him to go elsewhere. An argument between Jackson and Sweat broke out after Jackson pushed Sweat. While Jackson was arguing with Sweat, defendant left Reynolds's home through the front door and headed to a neighboring apartment complex. Neighbors reported that defendant walked by and mentioned "gun play" and warned them to get inside. Defendant knocked on the door of one of the apartments and requested that three of the men then present in the apartment come with him. Shortly thereafter, witnesses reported seeing defendant return to the area where Jackson and Sweat were arguing. Witnesses reported seeing defendant fire a gun at Jackson, though they were unable to agree on the exact number of shots fired. Jackson ran after the shots broke out, and an officer discovered his body on the side of the road. First responders pronounced Jackson dead at the scene, and an autopsy revealed that a bullet had pierced his right lung and heart before lodging in his left lung.

---

[1] The Court's order directing Respondent to answer the petition also authorized Petitioner to file a reply brief within 42 days after Respondent filed the answer. (Order, ECF No. 6.) Nonetheless, Petitioner sought leave to file a brief. (Pet'r's Mot., ECF No. 9.) The Court granted Petitioner leave to file a brief. (Order, ECF No. 12.) Petitioner then filed a document without a case caption or case number. The document Petitioner filed was the brief, with exhibits, from his direct appeal in the state courts. (Order Rejecting Documents, ECF No. 13.) The Court rejected the document because it did not comply with the court rules. Nevertheless, the Court has considered Petitioner's briefs in their entirety as part of the state court record supplied by Respondent. (ECF Nos. 11-14, 11-15.)

(Mich. Ct. App. Op., ECF No. 11-14, PageID.597.)  With regard to the testimony of Ms. Case, the court of appeals stated the following:

> In the instant case, defense counsel asserted during his opening statement that Miranda Case had made a statement to the police that she heard three shots fired shortly after defendant fired the first shot.  Defense counsel implicitly suggested that defendant did not fire these three shots and that they caused Jackson's death because it was unlikely that Jackson could travel roughly 200 yards before expiring if defendant's bullet punctured Jackson's lungs and heart.  Later, the prosecutor informed the court that, after reflecting on defense counsel's opening statements about Case, he believed that Case would need to be informed of her Fifth Amendment right against self-incrimination because she had committed a crime by lying to the police.  The prosecutor explained that Case made a statement to the police and then stated in a second statement that she had lied in the first.  The trial court decided to appoint counsel to advise Case about her Fifth-Amendment rights.
>
> When Case was called, her appointed attorney explained that Case would assert her Fifth Amendment right against self-incrimination "as it relates to any statements that she provided to the police."  The court questioned Case, who confirmed that she had voluntarily decided to exercise her Fifth Amendment right after consulting with her attorney.  The prosecutor asserted that the court had previously discussed that Case's right against self-incrimination would apply on a question-by-question basis, but asserted that it would be futile for defendant to elicit her testimony because on cross-examination he would ask whether she had lied to the police—a matter addressing credibility—and the court's only remedy, given her invocation of the Fifth Amendment before the jury, would be to strike her entire testimony.  Both the court and defense counsel agreed with this analysis, though defense counsel specified that he was not waiving any objection to the fact that Case would not be testifying.  Case never testified before the jury at trial.

(*Id.*, PageID.598–599) (footnotes omitted).

"The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)."  *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016).  Petitioner's habeas challenge does not call into question the facts recited by the state appellate court.  Indeed, Petitioner's descriptions of the facts from his appeal briefs are entirely consistent with the facts described by the court of appeals.

The jurors deliberated for less than two hours before returning their verdicts.  The sentences imposed were mandatory for each count.

3

Petitioner, with the assistance of counsel, directly appealed his convictions to the Michigan Court of Appeals. Petitioner raised two issues: the due process/prosecutorial misconduct issue he also raises in this petition, and a sufficiency of the evidence claim. By opinion issued July 18, 2017, the court of appeals rejected Petitioner's challenges and affirmed the trial court. (Mich. Ct. App. Op., ECF No. 11-14, PageID.597–602.)

Petitioner, again with the assistance of counsel, filed an application for leave to appeal to the Michigan Supreme Court, raising the same issues he raised in the court of appeals. By order entered April 4, 2018, the supreme court denied leave to appeal. (Mich. Order, ECF No. 11-15, PageID.997.) Petitioner then timely filed his habeas application.

## II.     AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not

consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "where the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial

court. *See Sumner v. Mata*, 449 U.S. 539, 546-547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Prosecutorial misconduct

A defendant's right to present his own defense witnesses constitutes "a fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967). But "*Washington v. Texas* does not hold that a defendant has the right to present any and all witnesses." *Davis v. Straub*, 430 F.3d 281, 290 (6th Cir. 2005). To the contrary, the Supreme Court indicated that "[n]othing in this opinion should be construed as disapproving testimony privileges, such as the privilege against self-incrimination[.]" *Washington*, 388 U.S. at 23 n. 21. "The fact that a witness decides to invoke his or her Fifth Amendment right not to testify does not deny the defendant seeking to call that witness a fair trial." *United States v. Stapleton*, 297 F. App'x 413, 430 (6th Cir. 2008).

Petitioner does not identify any clearly established federal law to the contrary. Instead, he approaches the issue through an argument about witness intimidation. He cites *Webb v. Texas*, 409 U.S. 95 (1972) for the proposition that the trial court may not intimidate a witness into testifying in a particular manner with admonitions regarding perjury. (Pet'r's Appeal Br., ECF No. 11-14, PageID.685.) Petitioner then relies on federal circuit authority for the proposition that the prosecutor may not intimidate witnesses with such threats either. (*Id.*, PageID.685–686.)

That puts the prosecutor in a box. If he explores with a witness the prospect of a witness possibly invoking the Fifth Amendment privilege, it may be perceived as a threat. If the prosecutor simply waits, attempts to elicit testimony, and then the witness asserts the privilege in front of the jury, the prosecutor is left in a situation fraught with "'potential for unfair prejudice[.]'" *United States v. Vandetti*, 623 F.2d 1144, 1147 (6th Cir. 1980).[2]

---

[2] The prejudice may cut against or in favor of the prosecutor, depending on the inference a juror might unavoidably draw from the assertion of the privilege. "[A] jury is 'not entitled to draw any inferences from the decision of a witness exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense.'" *United*

6

In rejecting Petitioner's argument. Petitioner's appellate panel relied on *People v. Callington*, 333 N.W.2d 260 (Mich. Ct. App. 1983), and the *Callington* panel, in turn, expressly relied on *Washington v. Texas*, 388 U.S. 14, and *Webb v. Texas*, 409 U.S. 95, balancing the competing interests recognized in those cases. In *Callington*, the Michigan Court of Appeals set out a procedure that would honor the witness's right to exercise the privilege, the criminal defendant's right to present the testimony of witnesses without intimidating threats, and the prosecutor's ability to avoid prejudice that flows from having witnesses invoke the privilege in front of jurors:

> We recognize that, under certain circumstances, the prosecutor, as an officer of the Court, has a duty to inform the Court that it may be necessary for the Court to inform a witness of his rights under the Fifth Amendment. Usually, a trial judge has no knowledge of the content of a proposed witness's testimony.
>
> However, we feel it is a better practice for the prosecutor to inform the Court, in the appropriate case, out of the presence of the witness, of the possible need for a witness to be informed of his or her rights under the Fifth Amendment. The prosecutor should further state the basis for such a request and the trial judge shall exercise his discretion in determining whether such warnings should issue. If the trial judge determines that such warnings are appropriate under the facts presented then the court shall inform the witness of his rights under the Fifth Amendment on the record out of the presence of the jury, if that be the case.
>
> We feel such a practice will greatly reduce if not eliminate future accusations of prosecutorial abuse or misconduct under the circumstances herein and would further relieve the trial court of trying to mitigate or explain away undue or overzealous warnings to a witness by the prosecution and thus unwittingly or otherwise force a trial judge to over-emphasize legitimate warnings, thereby transforming them into instruments of intimidation.

*Callington*, 333 N.W.2d at 263.

The prosecutor followed the *Callington* procedure in raising the issue regarding Ms. Case's testimony. The court, not the prosecutor, made the decision to provide counsel to Ms.

---

*States v. Ballard*, 280 F. App'x 468, 470 (6th Cir. 2008) (quoting *Bowles v. United States*, 439 F.2d 536, 541 (D.C. Cir. 1970)). But, although "'[s]uch refusals (to testify) have been uniformly held not to be a permissible basis for inferring what would have been the answer . . . logically they are very persuasive.'" *Namet v. United States*, 373 U.S. 179, 186 (1963).

Case. That counsel and Ms. Case, not the court or the prosecutor, decided to invoke the privilege. There was no intimidation by the prosecutor. That was the conclusion the court of appeals reached as well: "These facts indicate that the prosecutor did not threaten or intimidate Case to prevent her from testifying." (Mich. Ct. App. Op., ECF No. 11-14, PageID.599.) That determination is well-grounded in the record.

Although the prosecutor did nothing wrong under *Callington*, Petitioner still complains because the prosecutor picked and chose the witnesses he would bring to the trial court's attention as requiring consideration of the self-incrimination issue. There is support in the case law of this circuit that "picking and choosing" might be problematic. In *United States v. Meda*, 812 F.3d 502 (6th Cir. 2015), the Sixth Circuit acknowledged that a prosecutor's picking and choosing might rise to the level of prosecutorial misconduct. The inappropriate picking and choosing identified by the court, however, was not picking and choosing which witnesses to bring to the court's attention with regard to self-incrimination, but picking and choosing to grant immunity to witnesses who favored the prosecution but denying such immunity to witnesses who favored the defense. *Meda*, 812 F.3d at 518–519. There is no suggestion that the prosecutor was selective in granting immunity in Petitioner's case.

Moreover, the record does not support the Petitioner's claim that the prosecutor was impermissibly picky about which witnesses he brought to the court's attention with regard to the self-incrimination issue. The court of appeals explained:

> Defendant also argues that the prosecutor intimidated Case by singling her out for a warning about her Fifth-Amendment rights. However, on the first day of trial, the prosecutor identified four other witnesses that he believed should be informed of their Fifth-Amendment rights based on their possible criminal liability if they aided defendant. Thus, Case was not singled out as the only witness that needed to be informed of the protections granted by the Fifth Amendment. In a similar vein, defendant argues that the prosecutor selectively requested that Case receive a warning about self-incrimination while not requesting the same warning for a witness favorable to the prosecution, Swain, who also lied to the police.

8

> However, the prosecutor explained that he did not request a Fifth Amendment warning for Swain because he believed she could not be charged with making a false or misleading statement to a police officer where she corrected her misstatements and lies over the course of one interview. He distinguished this case, noting that Case lied in her first statement to police and did not retract her misstatements until making a second statement. Given this distinction, we are not persuaded that the prosecutor selectively asked the court to warn only Case in order to achieve a strategic advantage at trial.

(Mich. Ct. App. Op., ECF No. 11-14, PageID.600–601.) Petitioner does not offer clear and convincing evidence to overcome the presumptively correct factual findings of the appellate court.

Finally, even if the prosecutor sought to gain a strategic advantage by bringing the self-incrimination issue to the trial court's attention with regard to Ms. Case, but not with regard to Ms. Swain, and even if that were the sort of "picking and choosing" that the Sixth Circuit found objectionable in *Meda*, it would not warrant habeas relief because *Meda* is not clearly established federal law. Petitioner points to no Supreme Court authority that establishes that the conduct of the prosecutor here violated Petitioner's constitutional rights. Accordingly, he is not entitled to habeas relief.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to

9

warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:   January 21, 2021               /s/ Ray Kent
                                        Ray Kent
                                        United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).